FILED

2010 Sep-08  AM 11:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| CARL EARL DAVIS, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 1:09-CV-01669-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The claimant, Carl Earl Davis, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Davis timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Davis was forty-five years old at the time of the Administrative Law Judge's ("ALJ's") decision.  He has a middle-school education and past

employment  as a marble setter and a construction worker.(Tr. at 372, 22.)

He claims that he became disabled on July 2, 2006, due to learning

problems, depression, anxiety, chronic obstructive pulmonary disease

("COPD"), bronchitis, pain, and back problems. (Tr. at 325.)

When evaluating the disability of individuals over the age of eighteen,

the regulations prescribe a five-step sequential evaluation process.  *See* 20

C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278

(11th Cir. 2001).  The first step requires a determination of whether the

claimant is "doing substantial gainful activity."   20 C.F.R. §§

404.1520(a)(4)(i), 416.920(a)(4)(i).   If he or she is, the claimant is not

disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner

next considers the effect of all of the physical and mental impairments

combined.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   These

impairments must be severe and must meet the durational requirements

before a claimant will be found to be disabled.  *Id*.  The decision depends

on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340,

1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the

analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise,

the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.   20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*   If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Davis meets the nondisability requirements for a period of disability and DIB. (Tr. at 23.) He further determined that Davis has not engaged in substantial gainful activity since his application date. (Tr. at 17.) According to the ALJ, Claimant has the following severe impairments: depression, anxiety, borderline intellectual functioning, substance abuse disorder, degenerative disc disease, status post-lumbar surgery, COPD, and status post-left-sided pneumothorax. *Id.* The ALJ found, however, that these impairments, alone or combined, do not equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. *Id.* The ALJ determined that Davis has the RFC to perform a reduced range of light work that includes the following: no prolonged sitting or standing; no concentrated exposure to heat, cold, wetness, humidity, fumes, odors, dust, or gas; no working around hazardous machinery or from unprotected heights; no complex instructions; and no frequent changes in work routine. (Tr. at 19.)

According to the ALJ, Davis cannot perform any past relevant work, is a younger individual, and has a marginal education. (Tr. at 22.) Even though he cannot perform the full range of light work, using Medical-

Vocation Rule 201.25 as a guideline, the ALJ found a significant number of jobs exist in the national economy that Davis could perform, including work as an inspector, tagger, and sorter.  (Tr. at 23.) ALJ concluded his findings by stating that Claimant "has not been under a disability, as defined in the Social Security Act since. . . the date the application was filed." *Id* (citation omitted).

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.*  "The substantial evidence standard permits administrative decision makers to act

with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Davis raises six different issues in an effort to show impairment beyond the ALJ's conclusion.  He contends that

(1) the ALJ erred by relying on a state agency consultant; (Doc

7, at 21.)

(2) the ALJ failed to specify the weight he gave to Dr. Regina
Doody's opinion; (Doc. 7, at 10)

(3) the ALJ failed to address Dr. Doody's finding that Davis had
a Global Assessment of Functioning score of 50; (Doc. 7, at
20.)

(4) the ALJ did not address many of Dr. Tenbrunsel's, a
consulting psychologist, findings, despite giving greater
weight to Dr. Tenbrunsel's opinion; (Doc. 7, at 17.)

(5) the ALJ failed to discredit Davis's pain testimony forcing this
Court to accept the testimony as true; (Doc. 9, at 13.) and

(6) the ALJ posed an incomplete question to the vocational
expert, meaning the ALJ cannot ground his finding on the
expert's opinion that jobs exist. (Doc. 7, at 28.)

A. State Agency Consultant.

Davis argues that Section 405(b)(1) of the United States Code and a
host of regulations prohibit the ALJ from giving "any weight to the opinion

of a non-medical single decision maker who is not a physician." (Doc. 9, at 7.) Claimant thus contends that Venicia Edwards's assessment cannot constitute evidence because she is a non-medical consultant.

Section 405 allows an individual to request a hearing after an initial decision by the Commissioner of Social Security.  42 U.S.C. § 405(b)(1).  At this hearing, the ALJ "shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse the Commissioner's findings of fact and such decision."  42 U.S.C. § 405(b)(1).  Regulations limit what constitutes this evidence.  For example, 20 C.F.R. § 404.1512(b)(6) informs a claimant that "[evidence] includes, but is not limited to . . . findings . . . made by State agency medical or psychological consultants and other program physicians or psychologists, and opinions based on [consulting medical or psychological experts]. . ."  Section 404.1513(a) sets out that licensed physicians and licensed or certified psychologists are acceptable medical sources.  But Section 404.1513(d) alerts a claimant that the Commissioner "may use evidence from other sources" including physician's assistants, caregivers, and friends.   When evaluating the medical opinions of nonexamining sources, Section 404.1527(f)(2) makes clear that "[ALJs] will

consider opinions of State agency medical or psychological consultants, other program physicians and psychologists, and medical experts" but that the opinions do not bind the ALJs.

The ALJ, in this case, gave "some, but not great weight . . . to the opinion of the state agency consultants as contained in [Exhibit C8F]." (Tr. at 22.) Exhibit C8F comprises a Physical Residual Functional Capacity Assessment.   Venicia Edwards, the medical consultant, rendered the assessment, the findings of which "complet[ed] the medical portion of the disability determination." (Tr. at 452.) Her assessment limits Davis's lifting to less than twenty pounds and his exposure to extreme work environments, among other findings.  (Tr. at 446, 449.) Edwards noted that the assessment mirrored the conclusions of Dr. John Lary, a consulting physician.  (Tr. at 451.).

This Court disagrees with Claimant's argument.   Primarily, his proposition is legally flawed.  But his proposition also rests on shaky factual conclusions.   Section 405(b)(1) limits the ALJ to considering evidence submitted at the hearing.  Exhibit C8F was.  The regulations setting forth types of evidence that the ALJ will consider include the caveat "but not

limited to." *See, e.g.*, 20 C.F.R. § 404.1512(b).  Even with that caveat, the listed types of evidence allow the ALJ to consider a myriad of non-medical sources: relatives, friends, spouses, educators, and social workers among others.  20 C.F.R. § 404.1513(d).  Claimant nonetheless suggests that 20 C.F.R. § 404.1512(b)(6) limits the ALJ to findings by physicians.  Yet the regulation provides that evidence includes but is not limited those findings. 20 C.F.R. § 404.1512(b)(6).  The regulations permit the ALJ to look at non-medical evidence.

Claimant's proposition—in any event—is contingent upon Edwards being a non-medical source, holding little medical training and providing findings without a medical basis.  But the record only refers to her as a disability specialist or medical consultant; it does not specify which medical qualifications she has.  (Tr. at 452, 332.)  Edwards, in Exhibit C8F, states that her assessment does not significantly differ from Dr. John Lary's report, which gives the assessment a medical basis.  The record does not support Claimant's factual proposition.

Section 405(b)(1) and the regulations do not limit the ALJ's ability to reference non-medical evidence as Claimant suggests. In sum, the ALJ did

not err when he referenced Exhibit C8F as evidence.

      B.    Dr. Doody's Report.

Davis argues the ALJ erred by not specifying how much weight he gave Dr. Doody's opinion.   (Doc. 7, at 21.)   A court must give a treating physician's opinion substantial or considerable weight unless good cause shows otherwise.  *See Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11 th Cir. 2003).  When addressing a treating physician's opinion, ALJs must explicitly state the weight given to each opinion and why it was given that weight. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  In the hierarchy of medical opinions, a treating physician's opinion receives more weight than a consulting doctor, whose opinion, in turn, receives more weight than the opinion of a non-examining reviewing physician or consultant, whose opinion receives little weight.  *See Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).  Claimant argues that Dr. Doody is a treating physician.  (Doc. 7, at 20.)

A treating physician is one with whom a claimant has had an ongoing relationship, consistent with the type of medical impairment alleged.  20 C.F.R. § 404.1502.  No bright line rule exists to address the minimum

number of visits necessary.  *See id.*  But if the claimant goes to a physician solely for garnering a report to support a disability claim, then that physician is not a treating one.  *Id.*  The record thus does not support Davis's contention that Dr. Doody is a treating physician.

Davis filed his application for disability on November 28, 2006.  Only after that date did he visit Dr. Doody.  He visited the mental health center at which she worked three times, January 25, February 27, and March 22, 2007.  (Tr. at 479, 473, 471.)  But the Court cannot infer that Dr. Doody treated Davis at every visit.  (Tr. at 473.)  The center planned a year's worth of treatment starting in January of 2007; Davis did not complete the treatment which suggests that receiving treatment was not his only goal.  (Tr. at 480.)  Three visits only after applying for benefits fails to suggest the length of time and interest in treatment necessary to ascribe treating physician status to Dr. Doody.  Thus, she is a consulting physician without the attendant great weight provided to the opinions of treating physicians.

The ALJ did not address Dr. Doody's opinion directly, although he did rely on her medical records.  (Tr. at 18.)  Dr. Doody is not a treating physician however.   The ALJ does not need to address every examining

physician's opinion because in cases of multiple examining opinions the opinions may be repetitive or may lack findings relating to occupational functioning.  *See MacGregor*, 786 F.2d at 1053; *see also Broadway v. Astrue*, No. 1:08-CV-726, 2010 WL 1268076, at *4 (M.D. Ala. 2010).

      C.    Dr. Doody's Findings.

Claimant argues that the ALJ erred in not addressing Dr. Doody's finding suggesting impaired occupational functioning.  Dr. Doody examined Davis at the Mental Health Center of Madison County in early 2007.  (Tr. at 480.)   The health center records indicate that Davis had used amphetamines, marijuana, cocaine, hallucinogenics, inhalants, and prescribed narcotics.  (Tr. at 477.) Dr. Doody's notes show that Davis reported hallucinations resulting from his depressed state. (Tr. at 474.) She found him to have depressive disorder and, overall, a Global Assessment of Functioning ("GAF") score of fifty.  *Id.*

Claimant refers this Court to the DSM-IV which addresses GAF scores. The DSM-IV provides that a GAF score of 41-50 indicates severe impairments in occupational functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 1994).  Claimant

cites *McCloud v. Barnhart* to argue that the ALJ's failure to discuss the GAF score requires reversal.  (Doc. 9, at 17.)

In *McCloud*, the Eleventh Circuit remanded so that the ALJ could consider what weight to accord a GAF score of 45.  *McCloud v. Barnhart*, 166 Fed. App'x 410, 418 (11th Cir. 2006).   The record before the Eleventh Circuit did not indicate what weight the ALJ placed on that score.  *Id.*   Similarly in this case, the ALJ did not address Dr. Doody's assignment of a fifty.  This Court has no way of knowing the weight that the ALJ placed on Davis's score, a score suggesting severe occupational functioning and within the same range as the *McCloud* score.

Thus, remand is necessary. On remand, the ALJ must consider what, if any, weight to give Davis's 2008 GAF score.

D.    Dr. Tenbrunsel.

Dr. Tenbrunsel examined Davis after he applied for SSI. (Tr. at 432.) Dr. Tenbrunsel noted that Davis had not worked since 1995, complained of boredom, had been arrested, could pronounce difficult words without problems, and abused alcohol.  (Tr. at 432.)  Dr. Tenbrunsel then diagnosed him with Major Depressive Disorder, Recurrent, Severe with Psychotic

Features and opined that Davis will "have difficulty returning to work . . . . [functions] in the borderline range of intellectual ability . . . . [and] is perhaps a candidate for vocational rehabilitation."   (Tr. at 432-33.) Claimant points out that the *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition* ("DSM-IV"), provides that Major Depressive Disorder, even without psychotic features, "markedly interfere[s] with occupational functioning. . . ." (Tr. at 383.)

The ALJ partially addressed Dr. Tenbrunsel's opinion.  He noted that the opinion referenced Davis's borderline intellectual functioning and his irritable and difficult nature.   (Tr. at 21.)   The ALJ contrasted these statements with Davis's long marriage and cooperative interactions with doctors and reasoned that Davis could interact with others when needed. Yet the ALJ included Davis's irritability in forming the RFC anyway.   (Tr. at 21-22.)

The ALJ stated the weight that he gave to Dr. Tenbrunsel's opinion; he gave it greater weight.  Despite giving the opinion greater weight, the ALJ failed to address the following findings relating to Davis's occupational functioning: "[his limitations] will cause him to have difficulty returning to

work . . . . He is perhaps a candidate for vocational rehabilitation." (Tr. at 433.) More importantly, the ALJ failed to address Dr. Tenbrunsel's diagnosis of recurring major depressive disorder, a diagnosis—the record shows—with occupational limitations.  (Tr. at 383.)  Remand is thus necessary.  On remand, the ALJ must address all Dr. Tenbrunsel's occupational-related findings in light of his determination that Dr. Tenbrunsel's opinion receives greater weight.

      E.    Pain.

      The vocational expert testified that pain reaching a level of seven out of ten for half a workday along with spasms reducing a person to a prone position for one hour daily would eliminate all potential jobs.  (Tr. at 609-10.)  Claimant testified that he had muscle spasms ratcheting his pain level up to between eight and ten, one to two times daily, if he stands for thirty minutes or more.  (Tr. at 580-81.)  The spasms last thirty to forty-five minutes, require him to lie down for an hour, and respond occasionally to medication.  *Id.*  Claimant argues that the vocational expert's testimony coupled to his own testimony makes his credibility critical to determining whether he is disabled.  (Doc. 7, at 31-32.)

The Eleventh Circuit allows claimants to establish disability based on pain with their own testimony if they show (1) evidence of an underlying medical condition and either (2) that objective medical evidence corroborates the pain's severity or (3) that the underlying medical condition could reasonably be expected to cause the pain.  *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the ALJ decides not to credit a claimant's testimony, he must "articulate explicit and adequate reasons for doing so." *Id.* at 1223.  "Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true." *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

The ALJ found that Davis met the applicable standard to establish disability from his own testimony: "[T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Tr. at 20.) Davis testified, at the hearing, that his impairments severely limited his daily activities. (Tr. at 22.) In the opinion, the ALJ cited two factors "weigh[ing] against considering [this testimony] to be strong evidence in favor of finding the

claimant disabled."   (Tr. at 22.)   He cited "relatively weak medical evidence" and the inability to verify the testimony objectively.  (Tr. at 22.) The ALJ also found "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment for the reasons explained below."  (Tr. at 20.)

Yet the ALJ still appeared to credit Davis's testimony: the "reasons explained below" follow a pattern of listing one of Davis's complaints—back pain, citing evidence mitigating the allegation—walking normally during examination, and then finding " [Davis receives] the benefit of the doubt with regard to this allegation, and his residual functional capacity includes this limitation."  (Tr. at 21).  If the ALJ discredited Davis's testimony, the ALJ would not then include the allegation in the RFC.   This Court thus accepts Davis's testimony as true because the ALJ did not explicitly discredit—or offer reasons for implicitly discrediting—Davis's testimony regarding the limitations created by his pain.

Accepting this testimony as true provides some evidence that he is disabled.  The vocational expert's testimony establishes that severe pain

with spasms that require lying down for half a workday will prevent someone from holding a job.   Davis's testimony establishes that the painful muscle spasms forcing him to lie down affect him for about two hours a day. But the spasms are only triggered by prolonged standing.  In his RCF finding and his subsequent hypothetical, the ALJ included a sit or stand option.  With that option, the vocational expert testified that sufficient jobs would exist. Davis's testimony indicates that—with the option to sit or stand at will—he may not have the debilitating muscle spasms. Thus, remand is necessary for the ALJ to reconsider his RFC determination in light of Davis's testimony regarding the impact of his pain.

      F.    Hypothetical Question to Vocational Expert.

Once claimants show that their impairments prevent them from returning to their prior work, "the burden shifts to the Secretary, who must produce evidence to show that [a] claimant is able to perform alternative substantial gainful work that exists in the national economy." *Cowart v. Schweiker*, 662 F.2d 731, 736 (11th Cir. 1981).  To meet this burden, an ALJ generally solicits vocational-expert testimony by asking a hypothetical question encompassing the RFC determination.  *See Francis v. Heckler*, 749

F.2d 1562, 1566 (11th Cir. 1985).

The ALJ's  hypothetical question to the vocational expert included no limitations on reaching, seeing, hearing, speaking, understanding, and manipulating small objects.  (Tr. at 603.) The question also set out the following non-exertional considerations: ability to complete a regular workday at an acceptable pace and to respond to non-confrontational feedback, infrequent changes in routine, and simple goals; inability to understand complex instructions; and difficulty maintaining attention for more than two hours at a time.  *Id.*

The ALJ must instruct the vocational expert to consider all of claimant's severe impairments.  *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985).  The hypothetical question here may have included all of Davis's impairments.  But the original hypothetical may be deficient as it does not address Dr. Doody's GAF score, all of Dr. Tenbrunsel's occupational findings, and Davis's testimony regarding his subjective pain.  Thus, remand is necessary for the ALJ to determine whether his original hypothetical remains sufficient after he addresses all of Dr. Tenbrunsel's findings, after he decides what weight to give Dr. Doody's GAF finding and after he accepts

Davis's testimony as true.

IV.     Conclusion.

Upon review of the administrative record and after considering all of Mr. Davis's arguments, this Court affirms the Commissioner's decision with regard to Parts III.A and III.B of this opinion.  But this Court remands this case to the Commissioner for further proceedings consistent with Parts III.C, III.D, III.E. and III.F of this opinion.  A separate order will be entered.

Done this <u>8th</u> day of September 2010.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE